```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

ROSEMARY JENKINS,
    Plaintiff,

    v.
                                CIVIL ACTION NO.
                                15-10003-MBB
CITY OF TAUNTON, CHIEF EDWARD
WALSH, MARK BRADY, ROBERT
KRAMER, MATTHEW SKWARTO,
RALPH SCHLAGETER, JEFFREY
MARTIN, and FRED BOLTON,
    Defendants.

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION TO CORRECT THE SUMMARY JUDGMENT RECORD**
**(DOCKET ENTRY # 76); DEFENDANTS' SUPPLEMENTAL MOTION TO**
**CORRECT THE SUMMARY JUDGMENT RECORD (DOCKET ENTRY # 81)**

**January 8, 2018**

**BOWLER, U.S.M.J.**

    Pending before this court are two motions to correct the summary judgment record filed by defendants City of Taunton, Chief Edward Walsh ("Walsh"), Mark Brady ("Brady"), Robert Kramer ("Kramer"), Matthew Skwarto ("Skwarto"), Ralph Schlageter ("Schlageter"), Jeffrey Martin ("Martin"), and Fred Bolton ("Bolton") (collectively "defendants").[1]  (Docket Entry ## 76, 81).  Plaintiff Rosemary Jenkins ("plaintiff") opposes the requested corrections.  (Docket Entry # 82).

<u>BACKGROUND</u>

    On September 29, 2017, this court allowed in part and denied in part defendants' summary judgment motion.  (Docket Entry #

---

[1] As a result of court rulings and a stipulation, there are no remaining claims against the City of Taunton and Walsh.

73). On October 27, 2017, defendants filed a notice of appeal of the denial of qualified immunity. (Docket Entry # 77).

Brady, Schlageter, Martin, and Bolton, all police officers with the Taunton Police Department ("TPD"), as well as Kramer, a detective with the TPD, and Skwarto, a detective sergeant with the TPD, ("the responding officers") sought qualified immunity for the 42 U.S.C. § 1983 ("section 1983") and Massachusetts Civil Rights Act ("MCRA")[2] claims grounded upon an entry into plaintiff's apartment with an arrest warrant for her son.[3] (Docket Entry # 59, pp. 4-6). They argued that, "Prior to entering Plaintiff's apartment, [they] had a reasonable (although mistaken) belief that" Reginald Jenkins, Sr. ("Reginald"), plaintiff's son and a fleeing suspect, "lived in apartment #3." (Docket Entry # 59). They further asserted that, because of their "knowledge from past encounters that [Reginald's] mother and his minor children lived in apartment #3," the responding officers were not "plainly incompetent for believing RJS lived there" as well. (Docket Entry # 59).

---

[2] The MCRA is codified at Masschusetts General Laws chapter 12, section 11I.

[3] As to Kramer, defendants moved for summary judgment only on the claims based on the "entry into and search of Plaintiff's apartment" at 112 High Street in Taunton, Massachusetts. (Docket Entry # 58). The motion did not seek summary judgment on an excessive force claim against Kramer under section 1983 or a number of other claims against him. Absent a settlement, these claims will proceed to a trial.

2

The summary judgment opinion framed the qualified immunity inquiry as "whether 'the police "reasonably believed" prior to entry that [the suspect] (1) resided at the apartment and (2) would be present.'" (Docket Entry # 73, p. 43) (quoting United States v. Graham, 553 F.3d 6, 12 (1st Cir. 2009), and citing United States v. Werra, 638 F.3d 326, 327 (1st Cir. 2011)). The denial of immunity turned upon an issue of fact, namely, the reasonable belief of the responding officers that, prior to the entry into the apartment, Reginald resided in apartment three. (Docket Entry # 73, pp. 37-44)); see United States v. Graham, 553 F.3d at 12. "Drawing reasonable inferences in plaintiff's favor," this court set out the facts that best comported with the summary judgment standard. (Docket Entry # 73, p. 40) (quoting Morelli v. Webster, 552 F.3d 12, 19 (1st Cir. 2009)).

The undisputed facts in the LR. 56.1 statements established that: the building at 112 High Street had four apartments; apartment three was the only residence on the third floor; plaintiff resided in apartment three with her grandchildren; and TPD police were aware that plaintiff lived at the multi-unit building with her grandchildren because she "had called TPD on multiple occasions for assistance" with her grandchildren. (Docket Entry # 73, pp. 4-6) (Docket Entry # 63, ¶¶ 2, 3, 11, 12)

(Docket Entry # 69, ¶¶ 2, 3, 11, 12).[4] Drawing reasonable inferences in plaintiff's favor, this court found that "members of TPD were aware that plaintiff . . . lived in apartment three on the third floor." (Docket Entry # 73, p. 6). As also explained in the opinion, TPD records at the relevant time identified Reginald's address as apartment four or simply as 112 High Street. (Docket Entry # 73, pp. 26-27). TPD records did not designate Reginald's address as apartment three at 112 High Street, i.e., plaintiff's apartment. (Docket Entry # 73, p. 26). Dispatch transmissions included the victim's mother's statement that Reginald was inside "his apartment over there." (Docket Entry # 73, pp. 9, 44). After surveying the clearly established law in the context of these and other facts in the record construed in plaintiff's favor, this court found that such law "would have given a reasonable police officer clear notice that he lacked a reasonable belief that Reginald resided in apartment three at 112 High Street." (Docket Entry # 73, p. 44).

Defendants seek to change the factual record to reflect that plaintiff actually resided in apartment four because plaintiff misstated the apartment number at her deposition as apartment

---

[4] Defendants' LR. 56.1 statement deemed the above statements of fact undisputed only "for purposes of [the summary judgment] motion." (Docket Entry # 69, ¶¶ 2, 3). The parties cited plaintiff's deposition testimony for the agreed-upon fact that plaintiff resided in apartment three.

4

three.[5]  (Docket Entry ## 76, 81, 85).  Plaintiff implicitly disagrees and submits that she "testified truthfully and to the best of her memory" at her deposition regarding apartment three.[6] (Docket Entry # 82).  To support the request to change the summary judgment record, defendants now provide documents that existed at the time they sought summary judgment that show plaintiff lived in apartment four at the relevant time, i.e., the same apartment number reflected in various TPD records prior to the August 2013 entry into plaintiff's apartment.[7]  (Docket Entry ## 76-1 to 76-7, 81-1, 81-2).  A number of these documents further identify apartment four as located on the third floor. (Docket Entry ## 76-1 to 76-4, 81-2).  Once changed, defendants plan to file a motion to reconsider this court's denial of summary judgment on all claims related to the entry into plaintiff's apartment.  (Docket Entry # 76, p. 5) (Docket Entry #

---

[5]  See footnote four.

[6]  In an October 10, 2017 email, after defendants' counsel provided plaintiff's counsel with documents evidencing apartment four as plaintiff's address, plaintiff's counsel expressed a willingness to file a stipulation that plaintiff's address is apartment four.  After speaking to plaintiff a second time and rereading the deposition transcript, plaintiff's counsel decided he could not in good faith agree to a stipulation.  (Docket Entry # 76-9).

[7]  Defendants also provide an affidavit by Kramer that he: visited the property on October 11, 2017, i.e., after this court issued the summary judgment opinion; viewed the entrance door of each apartment residence; and determined that apartment four was "[t]he only residence located on the third floor."  (Docket Entry # 76-8).

5

81, p. 2).

The summary judgment record which defendants seek to correct by changing apartment three to apartment four includes: (1) defendants' LR. 56.1 statement that, "On August 2, 2013, Plaintiff resided in apartment #3 of 112 High Street in Taunton, Massachusetts"; (2) defendants' LR. 56.1 statement that, "Apartment #3 is the only residence located on the third floor"; (3) plaintiff's LR. 56.1 statement containing these same facts; and (4) defendants' response to plaintiff's LR. 56.1 statement admitting these facts as undisputed for purposes of summary judgment.[8] (Docket Entry # 60, ¶¶ 2, 6) (Docket Entry # 63, ¶¶ 2, 3) (Docket Entry # 69, ¶¶ 2, 3). To support the agreed-upon fact that plaintiff lived in apartment three, the LR. 56.1 statements cited plaintiff's deposition which, in pertinent part, reads as follows:

```
Q.  Where did you live before that?
A.  112 High Street.
Q.  Was there an apartment number?
A.  Apartment 3 . . ..
Q.  Can you kind of describe the -- maybe I should start
with, how many floors is 112 High Street?
A.  First floor, second floor, third floor.
Q.  Three floors?
A.  Yeah.
Q.  Which floor is your apartment, Apartment 3 on?
A.  Third floor.
Q.  Which floor is Apartment No. 1?
```

---

[8] Defendants also ask this court to order plaintiff to file a corrected version of her LR. 56.1 statement of material facts by substituting apartment four for all references to apartment three. (Docket Entry # 81).

6

```
A.  First floor.
Q.  What about Apartment No. 2?
A.  Second floor.
Q.  What about Apartment No. 4?
A.  Rear.
Q.  Which floor is that?
A.  Apartment 4.
Q.  Which floor is Apartment No. 4 on?
A.  Rear first floor.  It's the first floor Apartment 4.
```

(Docket Entry # 60-2, pp. 18, 47-48).

In addition to the foregoing, defendants seek to correct the references to apartment three in an affidavit they filed in which Skwarto, the officer who purportedly "led the entry into the apartment" (Docket Entry # 59, p. 4), swore to the following:

> 21.  At the time I entered apartment #3, I believed that Reginald Jenkins, Sr. was inside and that the apartment was his residence.  I also believed that he was likely armed and dangerous and attempting to avoid capture.
>
> 22.  Upon entering apartment #3, I observed minor children present inside the apartment.
>
> 23.  Officers did not locate Reginald Jenkins, Sr. inside apartment #3.

(Docket Entry # 60-13).  Once altered, defendants plan to file a corrected affidavit by Skwarto substituting apartment four for apartment three in order to support the yet-to-be-filed motion to reconsider the denial of summary judgment.[9]  (Docket Entry # 76, p. 5) (Docket Entry # 81, p. 2).  Complicating this proposed course of action is the notice of appeal filed one day after defendants filed the initial motion to correct.  (Docket

---

[9]  The dispositive motion deadline in this three-year-old case is January 9, 2017.

Entry # 77).

Plaintiff argues that defendants did not make a mistake at the time they filed their LR. 56.1 undisputed statement of material fact. Rather, they intended to present plaintiff's address as an undisputed fact. Only after this court issued the summary judgment decision "did defendants decide they did not like this fact," according to plaintiff. (Docket Entry # 82). Plaintiff accurately points out that the motion to correct cited no legal authority to support a correction in light of the appeal. In response, defendants assert that Fed. R. Civ. P. 62.1 ("Rule 62.1") provides the requisite authority. As stated in the reply brief, defendants:

> request that this Court issue an indicative ruling under Rule 62.1(a)(3) stating that it would grant the Defendants' Motion to Correct the Summary Judgment Record if the Court of Appeals remands for that purpose, or in the alternative, that the Motion to Correct raises a substantial issue with respect to the summary judgment motion which is on appeal.

(Docket Entry # 85).

DISCUSSION

In light of the pending appeal, defendants seek an indicative ruling under Rule 62.1(a)(3) that this court would grant the motions to correct in the event of a remand for that purpose or find that the motions raise a substantial issue. Plaintiff asks this court deny the motions. (Docket Entry # 82).

Rule 62.1 states that, "If a timely motion is made for relief that the court lacks authority to grant because" of a

8

pending appeal, "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1; see Fed R. App. P. 12.1(a). Rule 62.1(a)(3) allows "a party to request an 'indicative ruling' from the district court when that court lacks jurisdiction in the matter based on a pending appeal." Mendia v. Garcia, 874 F.3d 1118, 1120 (9th Cir. 2017). As stated in the rule, when the court lacks the authority because of a pending appeal, the court may also "deny the motion." Fed. R. Civ. P. 62.1(a)(2); Owens v. Republic of Sudan, 174 F. Supp. 3d 242, 291 (D.D.C. 2016), aff'd, 864 F.3d 751 (D.C. Cir. 2017) (citing Rule 62.1(a)(2) as "authorizing the denial of relief when an appeal is pending").

Ordinarily, the filing of an interlocutory appeal "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curium). Entitlement to an interlocutory appeal of a denial of qualified immunity turns upon whether the denial implicates a reviewable question of law or an unreviewable question of fact. See Morse v. Cloutier, 869 F.3d 16, 22 (1st Cir. 2017); Carter v. State of Rhode Island, 68 F.3d 9, 12 (1st Cir. 1995) ("'a district court's pretrial rejection of a

9

qualified immunity defense is not immediately appealable to the extent that it turns on an issue of fact'") (quoting Johnson v. Jones, 515 U.S. 304, (1995)) (ellipses omitted); see also McKenney v. Mangino, 873 F.3d 75, 80, 84 (1st Cir. 2017); Cady v. Walsh, 753 F.3d 348, 360 (1st Cir. 2014) (rejecting interlocutory appeal inasmuch as "defendants' briefing before us plainly disputes both the facts identified by the magistrate judge as well as the inferences proffered by the plaintiff and deemed reasonable by the magistrate judge").  Only a patently frivolous notice of appeal fails to "divest the district court of jurisdiction in the first instance."  Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 96 (1st Cir. 2003).

Rule 62.1 "codifies the procedure most courts used to address Rule 60(b) motions to vacate final judgments which had already been appealed."  Ret. Bd. of Policemen's Annuity and Ben. Fund of City of Chicago v. Bank of New York Mellon, 297 F.R.D. 218, 221 (S.D.N.Y. 2013); Fed. R. Civ. P. 62.1 Advisory Committee Notes, 2009 Adoption.  The rule, however, extends to "any motion that the district court cannot grant because of a pending appeal."  Fed. R. Civ. P. 62.1 Advisory Committee Note, 2009 Adoption; accord Ret. Bd. of Policemen's Annuity and Ben. Fund of City of Chicago v. Bank of New York Mellon, 297 F.R.D. at 221. The motions to correct therefore fall within the reach of Rule 62.1(a)(3).

Indicative rulings under Rule 62.1(a)(3) serve a purpose of obviating the necessity for an appeal. Export-Import Bank of Republic of China v. C. Bank of Liberia, 1:15-CV-09565 (ALC), 2017 WL 6398726, at *2 (S.D.N.Y. Dec. 13, 2017). "For example, a meritorious Rule 60(b) motion to vacate a judgment because of newly *discovered* evidence makes an appeal of that judgment unnecessary." Ret. Bd. of Policemen's Annuity and Ben. Fund of City of Chicago v. Bank of New York Mellon, 297 F.R.D. at 221 (emphasis added).

Here, defendants wish to use the rule to correct a material mistake they may have made in accepting plaintiff's deposition testimony at face value. They had the ability to obtain and file the evidence they currently proffer as part of the summary judgment record. In this context, providing relief under Rule 62.1(a)(3) with an indicative ruling would countenance reconsideration of rulings based on newly filed evidence available at the time a prior summary judgment motion was filed. Cf. Fed. R. Civ. P. 60(b)(2). In addition, plaintiff's deposition testimony that she resided in apartment three, the only apartment on the third floor, was not an oversight but, rather, more than likely her testimony to the best of her memory. Cf. Fed. R. Civ. P. 60(a); Bowen Inv., Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007) (discussing Fed. R. Civ. P. 60(a)). Defendants could have presented the evidence that

plaintiff resided in apartment four as part of the summary judgment motion. Principles of finality therefore counsel against allowing the motions. Allowing the motions would also lead to a second round of summary judgment motions and may further delay the resolution of this three-year-old case, which will likely involve a trial of the excessive force claim against Kramer in any event.

Finally, although mindful that qualified immunity is an immunity from suit as well as monetary damages, the denial of qualified immunity at the summary judgment stage does not foreclose the responding officers from raising the defense in a post-trial motion based on the facts in evidence at trial. See Rivera-Torres v. Ortiz Velez, 341 F.3d at 93; accord McKenney v. Mangino, 873 F.3d at 85. Indeed, "facts elicited at trial are often probative of the defendant's entitlement to qualified immunity." Rivera-Torres v. Ortiz Velez, 341 F.3d at 93. Thus, the responding officers retain the ability to move for judgment as a matter of law before the case is submitted to the jury and after a verdict based on qualified immunity in order to avoid any monetary damages. See id. "'[O]nce trial has been had, the availability of official immunity'" is ascertained based on "'the trial record, not the pleadings nor the summary judgment record.'" Id. at 92–93 (quoting 15A Wright, Miller & Cooper, Federal Practice and Procedure § 3914.10).

CONCLUSION

In accordance with the foregoing discussion and, as requested by plaintiff, the motions to correct (Docket Entry ## 76, 81) are **DENIED**.

                                      /s/ Marianne B. Bowler
                                      **MARIANNE B. BOWLER**
                                      United States Magistrate Judge